845 So.2d 993 (2003)
Otelia T. CISSEL, Appellant/Cross-Appellee,
v.
Stephen R. CISSEL, Appellee/Cross-Appellant.
Nos. 5D02-2409, 5D02-3567.
District Court of Appeal of Florida, Fifth District.
May 23, 2003.
Otelia T. Cissel, Ponte Vedra Beach, Pro Se.
Borden R. Hallowes, Ponte Vedra Beach, for Appellant/Cross-Appellee.
Stephen R. Cissel, Ponte Vedra Beach, Pro Se.
ORFINGER, J.
The former wife, Otelia T. Cissel,[1] and the former husband, Stephen R. Cissel, appeal and cross-appeal the final judgment terminating their marriage. The parties contend that the trial judge erred on virtually every issue raised in this contentious *994 litigation. We disagree and conclude that the trial judge ably sorted through the complex and hotly disputed issues arising from the long-term marital and business partnership of the parties. However, having carefully reviewed the record, we do find three matters requiring further consideration by the trial court.
First, the former wife argues that the trial court erred in awarding her only $2,000 per month permanent periodic alimony. We agree. The parties were married for more than twenty years, during the course of which two children were born, a seventeen-year-old son and a nine-year-old daughter, both of whom reside with the former wife. The parties had no significant marital assets. The trial judge found that the former husband's income was $132,600 per year. The trial court imputed income of $24,000 per year to the former wife. Both figures are supported by competent, substantial evidence. After considering the factors set forth in section 61.08(2), Florida Statutes (2002), the trial court determined that the former wife was entitled to receive permanent periodic alimony. We agree with that determination. However, taking into consideration all of the relevant factors, we conclude that the amount of permanent periodic alimony awarded is so inadequate as to constitute an abuse of discretion. Thrift v. Thrift, 632 So.2d 202 (Fla. 1st DCA 1994). On the record before us, there is no dispute about the fact that the former wife's reasonable needs are considerably greater than can be met by the amount of alimony awarded, even after considering the $2,000 gross monthly income imputed to her. Likewise, there can be little dispute that the former husband has the ability to contribute more than the amount awarded. Accordingly, on remand, the trial court shall reconsider the alimony award and award the former wife a greater amount commensurate with the former wife's needs, and the former husband's ability to pay. This will, of necessity, require that the amount of child support to be contributed by each party be recalculated.
Next, as part of the equitable distribution of the marital property, the court allowed the former husband to retain the marital furniture valued at $15,000. As an offset, the court awarded the former wife their membership in the Ponte Vedra Inn and Club, valued at $14,000. However, the trial court's reconciliation of its distribution of marital assets failed to take into account its earlier award of the furniture to the former husband. Instead, the final judgment provided:
11. Equitable Distribution:

A. The Wife shall be entitled to receive the following assets free and clear from any claim by the Husband:

1. BMW automobile $20,000.00
2. Ponte Vedra membership $14,000.00
 $36,000.00

B. The Husband shall be entitled to received the following assets free and clear from any claim by the Wife:

1. Toyota Forerunner $ 0.00
2. Harbor Club Timeshare $ 6,000.00
3. Escrow Funds $ 2,000.00
4. Marital Monies deposited
 in Prudential Account $ 3,500.00
 $11,500.00

The Court finds the above unequal distribution to the Wife equitably reimburses the Wife for various monies which have been transferred out of the Husband's bank accounts, both business and personal.
While it is clear that the court intended an unequal distribution to the former wife, it is not clear if the court intended that the former wife receive $24,500 more than the former husband as the final judgment reflects (excluding consideration of the furniture), or $9,500 more than the former husband (including the furniture). On remand, the trial court shall clarify this ambiguity and make such adjustments, if *995 any, as are necessary to accomplish the court's plan of equitable distribution.[2]
The parties also dispute the trial court's requirement that the former husband maintain a $500,000 life insurance policy. The former wife contends that the amount is insufficient to secure the former husband's child support and alimony obligations, while the former husband contends that life insurance is both unnecessary and unaffordable.
The final judgment requires the former husband to maintain life insurance so long as he is obliged to pay "child support and alimony to the Wife on behalf of the minor child" in order to "secure the Husband's child support obligation."[3] While the trial court's reference to alimony appears to us to be erroneous, given the wording of the remainder of the paragraph, the amount of insurance required far exceeds what would be necessary to secure only the former husband's child support obligation. Based on the amount of insurance required, it is unclear to us whether the trial court considered life insurance as security for the former husband's alimony obligation in addition to his child support obligation.
Section 61.08(3), Florida Statutes (2002), authorizes the trial court to order the obligor to maintain a life insurance policy as security for an alimony obligation in appropriate circumstances. Similarly, "to the extent necessary to protect an award of child support, the court may order the obligor to purchase or maintain a life insurance policy or a bond, or to otherwise secure the child support award with any other assets which may be suitable for that purpose." § 61.13(1)(c), Fla. Stat. (2002). As the statutes require, the circumstances must demonstrate the necessity for such protection. Thus, the trial court must make appropriate findings regarding the necessity for insurance protection. Guerin v. DiRoma, 819 So.2d 968, 970 (Fla. 4th DCA 2002). In doing so, the court should consider the cost and availability of the insurance, as well as the financial impact on the obligor. O'Connor v. O'Connor, 782 So.2d 502, 505 (Fla. 2d DCA 2001).
In the instant case, the trial court failed to make any findings necessary to justify requiring the former husband to maintain a life insurance policy. On remand, the trial court must determine whether appropriate circumstances exist to justify requiring the former husband to maintain life insurance, and, if so, whether such *996 insurance is to secure child support, alimony or both, and whether the former husband can obtain and afford such insurance. In all other respects, we affirm the final judgment.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
SHARP, W. and PALMER, JJ., concur.
NOTES
[1] The final judgment granted the former wife's request that her maiden name be restored. The former wife is now known as Otelia Teate.
[2] We also observe that certain assets are valued differently in different sections of the final judgment. Specifically, we note that paragraph O of the final judgment values the former wife's BMW at $25,000 while paragraph 11 values the same automobile at $20,000. Similarly, paragraph O values the parties timeshare at $6,600 while paragraph 11 values it at $6,000. Finally, paragraph O found that the Mony Mutual Fund, valued at $250, was a marital asset subject to equitable distribution, but the final judgment does not provide for its disposition. On remand, these matters should be corrected.
[3] Specifically, as to life insurance, the final judgment provided:

8. Life Insurance as Security for Child Support: As security for the Husband's child support obligation the Husband shall maintain a life insurance policy having a death benefit of $500,000.00. The Husband shall maintain said insurance for so long as the Husband has continuing obligation to pay child support and alimony to the Wife on behalf of the minor child. Said life insurance benefits may be decreasing in term provided that the death benefit is sufficient to secure the Husband's child support obligation. Within thirty (30) days from the entry of this Final Judgment and annually thereafter, the Husband shall provide proof to the Wife that said policy is in full force and effect. The minor child ... shall be named as primary beneficiary on said insurance policy.
(emphasis added).